IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1078

Filed: 1 December 2020

Durham County, No. 19 CVS 1958

PETER MILLAR, LLC, Plaintiff-Appellant,

v.

SHAW'S MENSWEAR, INC., d/b/a THE SHAW GROUP RETAIL CONSULTANTS, Third-Party Plaintiff-Defendant-Appellee,

v.

JC NAPLES, INC., G.C. OF WINTER PARK, INC., JCWP, LLC, and HOWARD CRAIG DELONGY, Third-Party Defendants-Appellants.

Appeal by plaintiff-appellant and third-party defendants-appellants from order entered 6 August 2019 by Judge Orlando F. Hudson, Jr. in Durham County Superior Court. Heard in the Court of Appeals 12 August 2020.

> *Williams Mullen, by Camden R. Webb and Lauren E. Fussell, for plaintiff-appellant.*

> *Manning Fulton & Skinner P.A., by William S. Cherry, III and Jessica B. Vickers, for defendant-appellee.*

> *Graebe Hanna & Sullivan, PLLC, by Christopher T. Graebe and J. William Graebe, for third-party defendants-appellants.*

BERGER, Judge.

On August 6, 2019, the trial court entered an order denying Appellants JC Naples, Inc.; G.C. of Winter Park, Inc.; JCWP, LLC; and Howard Craig Delongy's (collectively, "Delongy Stores") motions to dismiss and granting Appellee Shaw's

Menswear, Inc.'s ("Shaw") motion to stay. Appellant Peter Millar, LLC ("Millar") argues the trial court erred when it granted the motion to stay. Delongy Stores argues the trial court erred when it (1) denied the motions to dismiss the third-party complaint for improper venue and for lack of personal jurisdiction, and (2) did not award attorneys' fees pursuant to the contract between the parties. For the reasons stated herein, we affirm the trial court's order granting the motion to stay and denying attorneys' fees. We remand with instructions to enter an order dismissing the third-party complaint for improper venue and lack of personal jurisdiction.

## Factual and Procedural Background

Delongy Stores and Shaw are parties to various consignment agreements (the "Consignment Agreements"). Shaw, a men's clothing wholesaler in Georgia, agreed to purchase inventory from manufacturing suppliers for Delongy Stores, a group of men's clothing retailers in Florida. Pursuant to the Consignment Agreements, Delongy Stores "select[s] the inventory to be consigned" to them by submitting orders to the manufacturing suppliers using forms provided by Shaw. Shaw is "responsible for approving the amount of inventory requested by and to be consigned" to Delongy Stores. Then, Shaw will "deliver or cause to be delivered" the selected inventory to Delongy Stores. Shaw retains ownership of the inventory while it is in the possession of Delongy Stores. As Delongy Stores sells its consigned inventory, the sale proceeds are deposited in an account owned by Shaw. Shaw uses the proceeds to reimburse

the manufacturing suppliers, take a commission, and pay the balance to Delongy Stores.

Millar, a North Carolina men's clothing manufacturer, provides inventory to Shaw, some of which was consigned in Delongy Stores. According to Millar's verified complaint, "[a]s part of Shaw's services, . . . on behalf of Delongy Stores," Shaw was required to "pay[] [Millar] for merchandise that [was] shipped to [Delongy Stores]." As of February 6, 2019, Shaw owed Millar $448,050.66 for inventory shipped to Delongy Stores.

On February 8, 2019, Shaw filed suit against Delongy Stores in Georgia Superior Court for default and breach of the Consignment Agreements. Shaw did not name Millar as a party in the Georgia action. Delongy Stores removed the Georgia action to the United States District Court for the Middle District of Georgia. However, that court remanded the action back to Georgia Superior Court because the forum selection clause in the Consignment Agreements "requires the suit to take place in [the proper Georgia Superior court.]"

On February 6, 2019, Millar filed suit against Shaw in Durham County (North Carolina) Superior Court for the past due account. Shaw filed an answer, and also filed a third-party complaint against Delongy Stores. Delongy Stores subsequently filed a motion to dismiss the third-party complaint for improper venue and for lack of personal jurisdiction. Shaw filed a motion to stay the North Carolina action.

On August 6, 2019, the trial court entered an order denying Delongy Stores' motions to dismiss and granting Shaw's motion to stay. Millar argues the trial court erred when it granted Shaw's motion to stay. Delongy Stores argues the trial court erred when it (1) denied the motions to dismiss the third-party complaint for improper venue and for lack of personal jurisdiction, and (2) did not award attorneys' fees pursuant to the Consignment Agreements. We address each issue below.

Analysis

I. Interlocutory Appeals

"As a general rule, there is no right of appeal from an interlocutory order." *Edwards v. Foley*, 253 N.C. App. 410, 411, 800 S.E.2d 755, 756 (2017).

However, when "a motion for a stay . . . is granted, any nonmoving party shall have the right of immediate appeal." N.C. Gen. Stat. § 1-75.12(c) (2019). Thus, Millar's appeal is properly before this Court.

In addition, Delongy Stores' appeal of its motion to dismiss the third-party complaint for lack of personal jurisdiction is properly before this Court. "Any interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant[.]" N.C. Gen. Stat. § 1-277(b) (2019).

Further, Delongy Stores' appeal of its motion to dismiss the third-party complaint for improper venue is properly before us. This Court has previously stated,

"an appeal from a motion to dismiss for improper venue based upon a jurisdiction or venue selection clause dispute deprives the appellant of a substantial right that would be lost." *Mark Grp. Int'l, Inc. v. Still*, 151 N.C. App. 565, 566, 566 S.E.2d 160, 161 n.1 (2002). *See Hill v. StubHub, Inc.*, 219 N.C. App. 227, 232, 727 S.E.2d 550, 554 (2012) ("immediate appellate review of an interlocutory order is available . . . when the interlocutory order affects a substantial right under N.C. Gen. Stat. § 1-277(a)[.]").

However, an "order granting attorney's fees is interlocutory as it does not finally determine the action nor affect a substantial right which might be lost, prejudiced or be less than adequately protected by exception to entry of the interlocutory order." *Benfield v. Benfield*, 89 N.C. App. 415, 419, 366 S.E.2d 500, 503 (1988) (citation and quotation marks omitted). Here, the trial court's decision to not award attorneys' fees is interlocutory and is "best left until the underlying action has been resolved[.]" *Andaloro v. Sawyer*, 144 N.C. App. 611, 614, 551 S.E.2d 128, 131 (2001). Therefore, we dismiss this issue as interlocutory.

II. Motion to Stay

"We review a trial court's grant of a motion to stay for an abuse of discretion." *Bryant & Assocs., LLC v. ARC Fin. Servs., LLC*, 238 N.C. App. 1, 4, 767 S.E.2d 87, 90 (2014) (citation omitted). This Court

> [does] not re-weigh the evidence before the trial court or endeavor to make our own determination of whether a stay

> should have been granted. Instead, mindful not to substitute our judgment in place of the trial court's, we consider only whether the trial court's [grant] was a patently arbitrary decision, manifestly unsupported by reason.

*Id.* at 4, 767 S.E.2d at 90 (citation omitted). "[A]ppellate review is limited to insuring that the decision could, in light of the factual context in which it was made, be the product of reason." *Home Indem. Co. v. Hoechst Celanese Corp.*, 128 N.C. App. 113, 118, 493 S.E.2d 806, 809 (1997) (citation omitted).

> If, in any action pending in any court of this State, the judge shall find that it would work substantial injustice for the action to be tried in a court of this State, the judge on motion of any party may enter an order to stay further proceedings in the action in this State.

N.C. Gen. Stat. § 1-75.12(a) (2019). Traditionally, our Courts have considered the following factors to determine whether a substantial injustice would result if the trial court denied the stay:

> (1) the nature of the case, (2) the convenience of the witnesses, (3) the availability of compulsory process to produce witnesses, (4) the relative ease of access to sources of proof, (5) the applicable law, (6) the burden of litigating matters not of local concern, (7) the desirability of litigating matters of local concern in local courts, (8) convenience and access to another forum, (9) choice of forum by plaintiff, and (10) all other practical considerations.

*Lawyers Mut. Liab. Ins. Co. v. Nexsen, Pruet, Jacobs & Pollard*, 112 N.C. App. 353, 356, 435 S.E.2d 571, 573 (1993) (citation omitted).

"A court will not have abused its discretion in failing to consider each enumerated factor." *Id.* at 357, 435 S.E.2d at 574.

> Further, in determining whether to grant a stay, it is not necessary that the trial court find that all factors positively support a stay, as long as it is able to conclude that (1) a substantial injustice would result if the trial court denied the stay, (2) the stay is warranted by those factors present, and (3) the alternative forum is convenient, reasonable, and fair.

*Wachovia Bank v. Harbinger Capital Partners Master Fund I, Ltd.*, 201 N.C. App. 507, 520, 687 S.E.2d 487, 495 (2009) (citation omitted).

Millar argues that the trial court did not make a finding of fact that Shaw would suffer a substantial injustice if the trial court denied the stay. However, the trial court is not required to make written findings of fact and conclusions of law, rather, these are necessary on motions only when requested by a party. *See* N.C. Gen. Stat. § 1A-1, Rule 52(a)(2) (2019). Here, Millar made no specific request for findings of fact or conclusions of law, therefore, the trial court was not required to find facts. *See Allen v. Trust Co.*, 35 N.C. App. 267, 269, 241 S.E.2d 123, 125 (1978) (holding that "absent a request for findings of fact to support his decision on a motion, the judge is not required to find facts . . . and it is presumed that the [j]udge, upon proper evidence, found facts to support this judgment." (citation omitted)).

Here, there was sufficient evidence to support the trial court's order granting the motion to stay because the potential for inconsistent judgments from simultaneous proceedings in two different states addressing the same issue could

result in a substantial injustice. *See Wachovia Bank*, 201 N.C. App. at 520-21, 687 S.E.2d at 495-96. In the Georgia action, Shaw alleges that Delongy Stores breached the Consignment Agreements in several respects, some of which may directly impact this action. In addition, "the stay is warranted by [the *Lawyers Mutual*] factors[,]" including: the nature of the case, the convenience of the witnesses, the availability of compulsory process to produce witnesses, and the relative ease of access to sources of proof. *Id.* at 521, 687 S.E.2d at 496.

Accordingly, the trial court did not totally abandon consideration of the *Lawyers Mutual* factors and was able to conclude that a substantial injustice would result if it denied the stay. *See Wachovia Bank*, 201 N.C. App. at 521, 687 S.E.2d at 496. Because the trial court did not make "a patently arbitrary decision, manifestly unsupported by reason," the trial court did not abuse its discretion when it granted the motion to stay. *Bryant & Assocs., LLC*, 238 N.C. App. at 4, 767 S.E.2d at 90 (citation omitted). Accordingly, we affirm the trial court's order granting the motion to stay.

III. Motions to Dismiss

Delongy Stores argues that the trial court erred when it denied the motions to dismiss the third-party complaint for improper venue and for lack of personal jurisdiction. We agree.

A. Improper Venue

"A trial court's interpretation of a forum selection clause is an issue of law that is reviewed *de novo*." *US Chem. Storage, LLC v. Berto Constr., Inc.*, 253 N.C. App. 378, 382, 800 S.E.2d 716, 720 (2017) (citation omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Sony Ericsson Mobile Communications USA, Inc. v. Agere Systems, Inc.*, 195 N.C. App. 577, 579, 672 S.E.2d 763, 765 (2009) (citation and quotation marks omitted).

> In general, a court interprets a contract according to the intent of the parties to the contract. Further, the Supreme Court of North Carolina has held that where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect.

*Szymczyk v. Signs Now Corp.*, 168 N.C. App. 182, 186, 606 S.E.2d 728, 732 (2005) (citations and quotation marks omitted). Specifically, when a contract contains a mandatory forum selection clause, it "vest[s] exclusive jurisdiction" in a particular state or court. *US Chem. Storage*, 253 N.C. App. at 383, 800 S.E.2d at 720; *see also S&S Family Bus. Corp. v. Clean Juice Franchising, LLC*, No. COA19-264, 2020 WL 549627, *3 (N.C. Ct. App. Feb. 4, 2020) (unpublished) ("A mandatory forum selection clause vests exclusive jurisdiction in a particular state or court.").

Delongy Stores and Shaw stipulated that the forum selection clause at issue here is mandatory. In fact, the forum selection clause explicitly states that the

Consignment Agreements are subject to "the laws of the State of Georgia." Thus, we apply Georgia law to determine whether the forum selection clause is valid.

> Georgia courts have adopted the United States Supreme Court's ruling in *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 SC 1907, 32 LE2d 513 (1972), that forum selection clauses are prima facie valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances.

*Equity Tr. Co. v. Jones*, 339 Ga. App. 11, 11, 792 S.E.2d 458, 459 (2016) (citation and quotation marks omitted).

To invalidate a mandatory forum selection clause under Georgia law,

> the opposing party must show that trial in the chosen forum will be so inconvenient that he will, for all practical purposes, be deprived of his day in court. A freely negotiated agreement *should be upheld* absent a compelling reason such as fraud, undue influence, or overweening bargaining power.

*OFC Capital v. Colonial Distrib.'s*, 285 Ga. App. 815, 817, 648 S.E.2d 140, 142 (2007) (emphasis added) (citation and quotation marks omitted).

Shaw contends that enforcement of the forum selection clause may increase the risk of inconsistent outcomes. However, Shaw has not demonstrated that trial in Georgia would be "so inconvenient" that it will "be deprived of its day in court." *Id.* at 817, 648 S.E.2d at 142 (citation and quotation marks omitted). In fact, Shaw is having its day in court as evidenced by the lawsuit that it filed against Delongy Stores in Georgia. Moreover, Shaw has failed to allege or demonstrate a compelling reason that the forum selection clause, which establishes venue in Shaw's home state, was

the result of "fraud, undue influence, or overweening bargaining power." *Id.* at 817, 648 S.E.2d at 142 (citation and quotation marks omitted). We note that not only did Shaw draft the forum selection clause, but has also relied on its enforceability in the pending Georgia case. Specifically, Shaw previously stated that the "contractual forum selection clause is enforceable and is mandatory and that any dispute between Shaw and the Delongy [Stores] arising out of the Consignment Agreement *must be litigated* in the Putnam County, Georgia Superior Court." (emphasis added).

Based on the record, Shaw has failed to demonstrate that the forum selection clause is unenforceable. Thus, the trial court erred when it failed to enforce the mandatory forum selection clause and granted Delongy Stores' motion to dismiss for improper venue. *Id.* at 817, 648 S.E.2d at 142. We remand with instructions to enter an order dismissing Shaw's third-party complaint for improper venue.

B. Lack of Personal Jurisdiction

"When this Court reviews a decision as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court." *Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694, 611 S.E.2d 179, 183 (2005) (citation and quotation marks omitted). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding."

*City of Asheville v. Aly*, 233 N.C. App. 620, 625, 757 S.E.2d 494, 499 (2014) (citation omitted).

When a defendant challenges personal jurisdiction pursuant to Rule 12(b)(2),

> a trial court may hold an evidentiary hearing including oral testimony or depositions or may decide the matter based on affidavits. . . . Of course, this procedure does not alleviate the plaintiff's ultimate burden of proving personal jurisdiction at an evidentiary hearing or at trial by a preponderance of the evidence.

*Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615, 532 S.E.2d 215, 217 (2000) (citations omitted). When "the trial court chooses to decide the motion based on affidavits, the trial judge must determine the weight and sufficiency of the evidence presented in the affidavits much as a juror." *Banc of Am. Secs.*, 169 N.C. App. at 694, 611 S.E.2d at 183 (*purgandum*). It is not for this Court to "reweigh the evidence presented to the trial court." *Don't Do It Empire, LLC v. Tenntex*, 246 N.C. App. 46, 57, 782 S.E.2d 903, 910 (2016) (citation and quotation marks omitted).

When reviewing the issue of personal jurisdiction on appeal, this Court "employs a two-step analysis." *Skinner v. Preferred Credit*, 361 N.C. 114, 119, 638 S.E.2d 203, 208 (2006). "First, jurisdiction over the action must be authorized by N.C.G.S. § 1-75.4, our state's long-arm statute." *Id.* at 119, 638 S.E.2d at 208 (citation omitted). "Second, if the long-arm statute permits consideration of the action, exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Id.* at 119, 638 S.E.2d at 208.

"[N.C. Gen. Stat. §] 1-75.4 is commonly referred to as the 'long-arm' statute." *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977). Specifically, a North Carolina court has personal jurisdiction "[i]n any action which . . . [r]elates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction[.]" N.C. Gen. Stat. § 1-75.4(5)(d) (2019). "Essentially, this section of the long-arm statute reaches defendants who engage in commercial transactions with residents of this state." *Skinner*, 361 N.C. at 120, 638 S.E.2d at 209 (citing *Johnston Cnty. v. R.N. Rouse & Co. Inc.*, 331 N.C. 88, 95, 414 S.E.2d 30, 35 (1992) (describing N.C. Gen. Stat. § 1-75.4(5) as "authoriz[ing] the courts of North Carolina to exercise jurisdiction over a nonresident contracting within the state or contracting to perform services within the state")). As the third-party plaintiff, Shaw "has the burden of establishing prima facie evidence that one of the statutory grounds [for personal jurisdiction] applies." *Chapman v. Janko, U.S.A. Inc.*, 120 N.C. App. 371, 374, 462 S.E.2d 534, 536 (1995) (citation omitted); *see also Miller v. Szilagyi,* 221 N.C. App. 79, 84-85, 726 S.E.2d 873, 878-79 (2012) ("[T]he plaintiff bears the burden of proving, by a preponderance of the evidence, grounds for exercising personal jurisdiction over a defendant." (citation omitted)).

Here, Millar did not act "at the order or direction" of Delongy Stores, but rather at the "order or direction" of Shaw. Pursuant to the Consignment Agreements,

Delongy Stores "select[s] the inventory to be consigned to them" and Shaw is then "responsible for approving the amount of inventory requested[.]" Once approved, Shaw then "deliver[s] or cause[s] to be delivered" the selected inventory to Delongy Stores. Further, there was evidence before the trial court that "since about 2012 . . . [Millar] has always sent its invoices and its account statements directly to Shaw, and Shaw has always paid those invoices and account statements for merchandise that was shipped to [Delongy Stores]." The only goods "shipped from [North Carolina]" were those items that Shaw contracted for and purchased from Millar, which Delongy Stores previously requested from Shaw. Moreover, all of Delongy Stores' orders and directions to Shaw occurred in either Florida or Georgia, not North Carolina. *See Skinner*, 361 N.C. at 120, 638 S.E.2d at 209 (finding N.C. Gen. Stat. § 1-75.4(5)(d) did not confer personal jurisdiction over a nonresident defendant because "[t]here [was] no direct contact between plaintiffs and the [nonresident defendant].").

Although Shaw argues Delongy Stores ordered directly from Millar, there is no competent evidence in the record to suggest that there was direct contact between Millar and Delongy Stores. Rather, the only evidence in the record alleging direct orders between Delongy Stores and Millar are conclusory statements in Shaw's answer and interrogatories. These general statements, without more, do not demonstrate direct orders between Delongy Stores and Millar. Thus, Shaw, as the third-party plaintiff, has failed "to establish itself within some ground for the exercise

of personal jurisdiction" over Delongy Stores. *Parker v. Pfeffer*, ___ N.C. App. ___,

___, ___ S.E.2d ___, ___ (2020). Therefore, the trial court's finding that N.C. Gen.

Stat. § 1-75.4(5)(d) applies here is not supported by competent evidence.

While the dissent asserts that Delongy Stores and Millar "dealt with each other

directly with relation to goods shipped from this State" and that this ought to be

"sufficient to maintain personal jurisdiction" under our long-arm statute, this

reasoning ignores the second operative portion of N.C. Gen. Stat. § 1-75.4(5)(d). In

fact, N.C. Gen. Stat. § 1-75.4(5)(d) requires both that the action relate to goods

shipped from our State and also that those goods were shipped to *the defendant* on

*the defendant's* order or direction. The General Assembly could have applied this

long-arm provision to all transactions involving goods shipped from this State, but

instead chose narrower language. Accordingly, we must apply that plain language

and, here, there simply is no evidence to satisfy the second prong of N.C. Gen. Stat. §

1-75.4(5)(d).

Here, Shaw served as a consignment intermediary between Millar and Delongy

Stores, and there is insufficient evidence of direct contact or of a contractual

agreement between Millar and Delongy Stores to confer jurisdiction under N.C. Gen.

Stat. § 1-75.4(5)(d). Even assuming Shaw "caused [Millar] to deliver[]" the selected

inventory shipments directly to Delongy Stores, this is insufficient for purposes of

N.C. Gen. Stat. § 1-75.4(5)(d) because Delongy Stores did not directly order from

Millar. *See Robbins v. Ingham*, 179 N.C. App. 764, 769, 635 S.E.2d 610, 614-15 (2006) (refusing to impute the affirmative actions of an intermediary to a third-party defendant for purposes of establishing personal jurisdiction under N.C. Gen. Stat. § 1-75.4(5)(d)). Therefore, "[b]ecause [Shaw] has failed to meet [its] burden of proving a statutory basis for personal jurisdiction, we need not conduct a due process inquiry because any further inquiry will be fruitless." *Parker*, ___ N.C. App. at ___, ___ S.E.2d at ___; *see also Skinner*, 361 N.C. at 120, 638 S.E.2d at 209 (ending its personal jurisdiction analysis after concluding that "[a]lthough [N.C. Gen. Stat. § 1-75.4(5)(d)'s] grant of jurisdiction is far-reaching, the transactions in this case do not fall within its grasp.").

Thus, we remand with instructions to enter an order dismissing the third-party complaint for lack of personal jurisdiction.

Conclusion

For the foregoing reasons, we dismiss Delongy Stores' appeal on the issue of attorneys' fees as interlocutory. We affirm the trial court's order granting the motion to stay, and remand with instructions to enter an order dismissing Shaw's complaint for improper venue and lack of personal jurisdiction.

DISMISSED IN PART; AFFIRMED IN PART; AND REMANDED IN PART.

Judge DIETZ concurs.

Judge ARROWOOD concurs in part, dissents in part.

No. COA19-1078 – *Peter Millar, LLC v. Shaw's Menswear Inc.*

ARROWOOD, Judge, concurs in part and dissents in part.

I concur in the portion of the majority opinion that affirms the trial court's order granting the motion to stay. I further agree that the forum selection clause under the contract is valid, however, I would vacate the order denying dismissal with respect to that issue and remand this matter to the trial court to enter an order making appropriate findings of fact with respect to the issue of whether there are appropriate reasons under Georgia law as constrained by United States Supreme Court precedent for North Carolina to refuse to honor that provision of the contract. I respectfully dissent from the portion of the majority opinion holding the trial court lacked personal jurisdiction over the third-party defendants.

## I.     Venue

Although the cases which address contract forum selection clauses normally deal with both jurisdiction and venue and the two issues are sometimes "blurred," the two inquiries are different. *ITS Leasing, Inc. v. RAM DOG Enterprises, LLC*, 206 N.C. App. 572, 578, 696 S.E.2d 880, 884 (2010) (citing *Perkins v. CCH Computax, Inc.*, 333 N.C. 140, 144, 423 S.E.2d 780, 783 (1992)). Generally, "courts no longer view forum selection clauses as ousting the courts of their jurisdiction[,]" but instead "allow a court to refuse to exercise that jurisdiction in recognition of the parties' choice of a different forum." *Perkins v. CCH Computax, Inc.*, 333 N.C. 140, 143, 423 S.E.2d 780, 782 (1992).

In this case, the Consignment Agreements between Delongy and Shaw include the following forum selection clause, in relevant part:

> This Agreement will be governed by and construed in accordance with the laws of the State of Georgia. The parties agree that the situs and venue of any suit commenced under this contract shall be Putnam County, Georgia. The parties further agree that any negotiations on transactions affecting this contract and the entry into this contract shall be deemed to have taken place in Putnam County, Eatonton, Georgia. [Delongy Stores] hereby consents to the personal jurisdiction of the courts of Putnam County, Georgia, and agrees to acknowledge service of any suit filed against [Delongy Stores] by [Shaw] in Putnam County, Georgia.

As the clause makes apparent, although the venue "shall be" designated in Georgia, the matter of jurisdiction is separate.

Defendant concedes that the forum selection clause is enforceable, however, they argue that they can avoid its enforcement by showing that it is "unfair or unreasonable." *See Perkins*, 333 N.C. at 146, 423 S.E.2d at 784 (citing *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 32 L. Ed. 2d 513 (1972)).

I believe that the trial court needs to make findings of fact and conclusions of law with respect to this enforceability under the standard for enforceability set forth by the United States Supreme Court in *Bremen* in order for us to appropriately review the same. I do not believe that we, as a matter of law, can make the determination reached by the majority that the forum selection clause is enforceable without

findings from the trial court under the test established by *Bremen* as to whether it would be unfair or unreasonable to enforce based upon the facts of this case. Therefore, I would hold that the trial court erred in failing to make appropriate findings of fact and conclusions of law with respect to why the forum selection clause should not be enforced. I would vacate that portion of the order and remand this issue to the trial court to make the appropriate finding and conclusion.

## II.     Personal Jurisdiction

The majority concludes that the forum selection clause is mandatory and vests exclusive jurisdiction in Georgia, in addition to asserting that there was not competent evidence to establish grounds for the exercise of personal jurisdiction under the long-arm statute. I respectfully disagree with the majority's statutory analysis and application of our caselaw.

As previously noted, the issues of venue and jurisdiction require separate analyses in the context of forum selection clauses. The general rule is when a jurisdiction is specified in a provision of contract, the provision generally will not be enforced as a mandatory selection clause with respect to jurisdiction without some further language that indicates the parties' intent to make jurisdiction exclusive. *Printing Servs. of Greensboro, Inc. v. Am. Capital Grp., Inc.*, 180 N.C. App. 70, 74, 637 S.E.2d 230, 232 (2006), *aff'd*, 361 N.C. 347, 643 S.E.2d 586 (2007). Indeed, mandatory forum selection clauses recognized by our appellate courts have contained

words such as "exclusive" or "sole" or "only" which indicate that the contracting parties intended to make jurisdiction exclusive. *Id.* This Court has not interpreted the phrase "shall be" as sufficient to create a mandatory forum selection clause. *R.H. Donnelley Inc. v. Embarq Corp.*, 228 N.C. App. 568, 749 S.E.2d. 112, 2013 WL 4005261, *3 (2013) (unpublished) (citing *Mark Grp. Int'l, Inc. v. Still*, 151 N.C. App. 565, 568, 566 S.E.2d 160, 162 (2002); *Cable Tel Servs., Inc. v. Overland Contr'g, Inc.*, 154 N.C. App. 639, 645, 574 S.E.2d 31, 35 (2002)).

In this case, the forum selection clause states that the "situs and venue of any suit commenced under this contract *shall be* Putnam County, Georgia[,]" and goes on to acknowledge that Delongy Stores "consents to the personal jurisdiction of the courts of Putnam County, Georgia[.]" While this certainly allows Georgia courts to exercise jurisdiction over Delongy Stores, it does not include language that indicates that the parties intended to make jurisdiction exclusive, nor does it preclude the exercise of jurisdiction in North Carolina.

In examining whether a non-resident defendant is subject to personal jurisdiction in our courts, we engage in a two-step analysis. *Beem USA Ltd.-Liab. Ltd. P'ship v. Grax Consulting LLC*, 373 N.C. 297, 302, 838 S.E.2d 158, 161 (2020) (citing *Skinner v. Preferred Credit*, 361 N.C. 114, 119, 638 S.E.2d 203, 208 (2006)). First, jurisdiction over the defendant must be authorized by N.C. Gen. Stat. § 1-75.4— North Carolina's long-arm statute. *Id.* Second, "if the long-arm statute permits

consideration of the action, exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Id.* (quotation marks omitted).

## A.    The Long-Arm Statute

This Court has held that "[w]hile choice of law clauses are not determinative of personal jurisdiction, they express the intention of the parties and are a factor in determining whether minimum contacts exist and due process was met." *Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.,* 169 N.C. App. 690, 700, 611 S.E.2d 179, 186 (2005) (internal quotation marks and citation omitted). Thus, while we must consider this clause in our due process analysis, it does not, standing alone, operate to defeat personal jurisdiction over third-party defendants. *R.H. Donnelley Inc.*, 2013 WL 4005261 at *3 (citing *Banc of Am. Secs. LLC,* 169 N.C. App. at 700, 611 S.E.2d at 186).

In this case, I would hold that there is statutory authority under N.C. Gen. Stat. § 1-75.4(5)(d). A North Carolina court has personal jurisdiction "[i]n any action which . . . [r]elates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction." N.C. Gen. Stat. § 1-75.4(5)(d) (2019). "Essentially, this section of the long-arm statute reaches defendants who engage in commercial transactions with residents of this [S]tate." *Skinner,* 361 N.C. at 120, 638 S.E.2d at 209.

North Carolina's long-arm statute

> is liberally construed to find personal jurisdiction over nonresident defendants to the full extent allowed by due process. Accordingly, when evaluating the existence of personal jurisdiction pursuant to [this statute], the question of statutory authorization collapses into the question of whether [the defendant] has the minimum contacts with North Carolina necessary to meet the requirements of due process.

*Lulla v. Effective Minds, LLC*, 184 N.C. App. 274, 277, 646 S.E.2d 129, 132 (2007) (citation omitted).

Although the majority seeks to engage in a plain language analysis of the long-arm statute, I would adhere to the liberal construction of the long-arm statute in accordance with our precedent. I am concerned by the potential implications of the majority's holding. By narrowly interpreting the long-arm statute, the majority opinion effectively creates a loophole to allow individuals and corporations to shield themselves from the exercise of personal jurisdiction in North Carolina by conducting business through an intermediary. Although I do not seek to apply the long-arm statute to all transactions involving goods shipped from this State, as the majority suggests, I believe the facts of this case, specifically the intertwined nature of the business relationships and the knowledge of Delongy Stores that it was ordering goods from a North Carolina vendor, require a holding that the third-party defendants are subject to the jurisdiction of North Carolina courts. While the facts

in this case are unique in that the North Carolina entity that sold and shipped the goods is not seeking to invoke jurisdiction against the ultimate recipient of those goods, because they are suing a third-party to recover for those goods, I believe that this provision of the long-arm statute is met and that jurisdiction lies against the third-party defendants to the extent that it is not violative of due process.

I further dissent from the majority's holding that there was insufficient evidence to support the trial court's order denying the motion to dismiss. Under N.C. Gen. Stat. § 1A-1, Rule 52(a)(2), the trial judge need not make findings of fact and conclusions of law when making a decision on a motion unless they are requested by a party or required by Rule 41(b) which is not applicable here. *Fungaroli v. Fungaroli*, 51 N.C. App. 363, 367, 276 S.E.2d 521, 524 (1981). When the record contains no findings of fact, " '[i]t is presumed . . . that the court on proper evidence found facts to support its judgment.' " *Id.* (quoting *Sherwood v. Sherwood*, 29 N.C. App. 112, 113-14, 223 S.E.2d 509, 510-11 (1976)). On review, this Court is "not free to revisit questions of credibility or weight that have already been decided by the trial court." *Banc of Am. Secs. LLC,* 169 N.C. App. at 695, 611 S.E.2d at 183.

In this case, as in *Fungaroli* and *Banc of America Securities LLC*, the record contains no indication that the parties requested that the trial judge make specific findings of fact, nor did the order contain any findings of fact. Accordingly, we must presume that the trial judge made factual findings sufficient to support ruling in

favor of Shaw. It is this Court's task to review the record to determine whether there is any evidence to support the trial court's conclusion that North Carolina courts may exercise jurisdiction over Delongy Stores without violating Delongy Stores' due process rights.

The record reflects that the third-party defendants Delongy Stores ordered merchandise directly from plaintiff, Millar, who then shipped the merchandise from North Carolina. The majority's observation that defendant Shaw's received "invoices and account statements for every bit of merchandise that was shipped," ignores the fact that Delongy Stores and Millar dealt with each other directly with relation to goods shipped from this State. Although defendant Shaw was primarily involved in the overall business arrangement, the alleged "over-orders" by Delongy Stores and the direct transactions between Delongy Stores and Millar are in my opinion sufficient to maintain personal jurisdiction over Delongy Stores in this matter. The existence of Shaw as an intermediary does not change the fact that Delongy Stores has availed themselves of the privilege of purchasing and receiving goods from this State.

## B.    Due Process

The second step under N.C. Gen. Stat. § 1-75.4 is whether the exercise of personal jurisdiction by North Carolina courts violates due process of law. "By the enactment of [N.C. Gen. Stat. §] 1-75.4(1)(d), it is apparent that the General Assembly

intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process." *Dillon v. Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977).

To satisfy the requirements of the due process clause, there must exist "certain minimum contacts [between the non-resident defendant and the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 85 L. Ed. 278, 283 (1940)). In each case, there must be some act by which the defendant purposefully avails themselves of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws; the unilateral activity within the forum state of others who claim some relationship with a non-resident defendant will not suffice. *Hanson v. Denckla,* 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298 (1958). This relationship between the defendant and the forum must be "such that [they] should reasonably anticipate being haled into court there." *Tom Togs, Inc. v. Ben Elias Indus. Corp.,* 318 N.C. 361, 365-66, 348 S.E.2d 782, 786 (1986) (internal quotation marks and citation omitted). Following the mandate of the United States Supreme Court, our courts have rejected any *per se* rule of long-arm jurisdiction. *Buying Group v. Coleman,* 296 N.C. 510, 251 S.E.2d 610 (1979).

Although a contractual relationship between a North Carolina resident and an out-of-state party alone does not *automatically* establish the necessary minimum contacts with this State, nevertheless, a single contract may be a sufficient basis for the exercise of personal jurisdiction if it has a substantial connection with this State. *Tom Togs*, 318 N.C. at 367, 348 S.E.2d at 786. In *Tom Togs*, our Supreme Court analyzed whether a contract between a North Carolina resident plaintiff and a non-resident defendant for the sale of shirts presented a substantial connection with this State. The defendant in *Tom Togs* was aware that the plaintiff was a North Carolina resident, and that the shirts were to be shipped from this State. *Id.*, 318 N.C. at 367, 348 S.E.2d at 787. Accordingly, our Supreme Court held that the contract and business dealings between defendant and plaintiff created a "substantial connection" with this State.

Here, as in *Tom Togs*, third-party defendants Delongy Stores were aware that plaintiff Millar is a North Carolina resident, and each party maintained a series of business transactions involving the shipment of clothing from a North Carolina resident plaintiff to a non-resident defendant. Although there was not a written contract between Delongy Stores and Millar, the nature of the business transactions and the ongoing business relationship between the plaintiff and the third-party defendants which resulted in the alleged debt that plaintiff is suing defendant Shaw over in my opinion presents a "substantial connection" with this State.

Accordingly, both steps of analysis under the North Carolina long-arm statute are satisfied, and the exercise of personal jurisdiction over Delongy Stores does not violate due process requirements. Therefore, I would hold that the trial court did not err in denying the third-party defendants' motion to dismiss for lack of personal jurisdiction.

## III.    Conclusion

I would affirm the order denying the motion to dismiss for lack of jurisdiction, vacate the order denying the motion to dismiss for improper venue and remand for the trial court to make findings of fact with respect to whether third-party plaintiff can meet the standard established under *Bremen* to circumvent the forum selection clause under the contract between Shaw and Delongy Stores. While Georgia law applies, it is constrained by the overarching mandate of the United States Supreme Court with respect to the enforcement of forum selection clauses.